· This was a libel against the barkentine John Laughlin brought by one Griffenberg for masts and spars furnished by him to said vessel. The libelant claimed a lien under the act of assembly of Pennsylvania of June 13, 1836, § 1 (supra). The hull of the vessel was built and completed at Seaford, Del., and was then taken up to Philadelphia to be rigged. A contract was made with the libelant in Delaware to furnish the necessary masts and spars, etc., which were prepared and finished in Wilmington, and then towed up to Philadelphia to be fitted in the hull.

Mr. Coulston, for libelant, claimed that, under the case of The Lottawanna, 21 Wall. [88 U. S.] 558, a lien, existing under the state law for materials furnished in fitting out a vessel, could be enforced by proceedings in rem in admiralty.

Mr. Flanders, contra, contended that a court of admiralty had no jurisdiction to enforce such a lien, citing People's Ferry Co. v. Beers, 20 How. [61 U. S.] 393; Roach v. Chapman, 22 How. [63 U. S.] 129.

CADWALADER, District Judge. Whether there was a lien under the Pennsylvania statute is an immaterial question, because the demand is not for maritime supplies, and if it had been the place of supply would have been the home port of the vessel. The demand arose before she was equipped so as to be in a condition to receive "supplies" in the distinctive sense of that word. The libel is dismissed for want of jurisdiction, with costs.

---

GRIFFIN, Ex parte. See Case No. 4,650.

---

## Case No. 5,812.

### In re GRIFFIN.

[8 Ben. 388.] [1]

District Court, S. D. New York.    Feb., 1876.

COSTS—COMPOSITION—EXAMINATION OF BANKRUPT.

A bankrupt is primarily liable for the costs of the register incurred in the examination of the bankrupt by contesting creditors, at a meeting of creditors held under an order of the court in relation to a composition proposed by him.

The register in this case certified to the court that by order of the court in this matter it was referred to the register to hold a meeting of creditors at his office, at which the bankrupt [James Griffin] should propose a composition to his creditors in settlement of his debts; that the meeting was held at which the bankrupt made his proposition and filed his statement of debts and assets and offered himself for examination, and was examined by the attorney for certain

contesting creditors on different days; that the register had requested the bankrupt to pay the costs of such proceedings and the bankrupt objected to paying them and requested the register to certify the question to the court. The register added to his certificate his opinion, "that the costs so charged against the alleged bankrupt for services so rendered are primarily chargeable to and payable by the alleged bankrupt, the proceedings generally being had at his instance and request; and that the bankrupt should pay such costs, leaving the question to be decided in future as to whether the examination was justified by the circumstances of the case and the results attained."

BLATCHFORD, District Judge. I concur in the views of the register.

---

## Case No. 5,813.

### In re GRIFFIN.

[2 N. B. R. 254 (Quarto, 85); 2 Am. Law T. Rep. Bankr. 23; 1 Chi. Leg. News, 103.] [1]

District Court, S. D. Georgia.    Nov. 7, 1868.

LEVY BY UNITED STATES MARSHAL—EXEMPTION OF PROPERTY OF BANKRUPT.

Property of the bankrupt, exempt, both by state and bankrupt law from levy and sale, cannot be sold after he has filed his petition in bankruptcy, although then levied on by a United States marshal.

By FRANK S. HESSELTINE, Register: I, the undersigned, having been designated by the court as the register in bankruptcy before whom the proceedings in the above matter of the bankruptcy of Jesse H. Griffin are to be had, do hereby certify, that in the due course of such proceedings the following question, pertinent to the same, arose and was stated and agreed to by Richard K. Hines, Esq., attorney for J. Waxlebaum et al., purchasers at United States marshal's sale, J. John Beck, Esq., assignee of the estate of the bankrupt, and A. Wood, Esq., and C. B. Wooten, Esq., attorneys for the bankrupt.

Jesse H. Griffin filed his petition to be adjudged a bankrupt on the 3d day of March, 1868. On the 27th day of the same month he was adjudged a bankrupt. On the 10th day of February, 1868, the United States marshal, by virtue of a fieri facias in favor of certain creditors of the said bankrupt, levied upon one house and lot and a storehouse in the town of Morgan, Ga., and lot 150 of the Tenth district, Telfair county, Ga., all the real estate of the said Griffin, and on the 7th day of April sold the same at public outcry to J. Waxlebaum et al., executing a deed therefor. Question: Could the United States marshal sell the said real estate, and thus deprive the bankrupt of his right to a home-

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reprinted from 2 N. B. R. 254 (Quarto, 85), by permission. 1 Chi. Leg. News, 103, contains only a partial report.]

stead therein? And the said parties requested that the same should be certified to your honor for your opinion thereon.

By the bankrupt act [of 1867 (14 Stat. 517)], the bankrupt, on the filing of his petition for the benefit of its provisions, and complying with the requirements of the eleventh section thereof, is entitled to have exempted and set apart to him by the assignee, in addition to such as is exempted by the fourteenth section of the act, and that exempted by the laws of the United States. "such other property not included in the foregoing exceptions as is exempted from levy and sale upon execution, or other process or order of any court, by the laws of the state in which the bankrupt has his domicile at the time of the commencement of the proceedings in bankruptcy." By the Code of Georgia, there is exempted to the head of a family, from levy and sale, "fifty acres of land, and five additional acres for each of his or her children under the age of sixteen years. This land shall include the dwelling-house, if the value of such house and improvements does not exceed the sum of two hundred dollars;" or, in lieu of the above land, "real estate in a city, town, or village, not exceeding five hundred dollars in value," beside other property therein specified. The bankrupt, in compliance with the general orders and forms in bankruptcy, claimed, in his schedule under form "B 5," to have exempted to him, with other property, "a dwelling house and lot containing three acres, in the town of Morgan, Calhoun county, Ga., value five hundred dollars." It is my opinion that the act of filing his petition in bankruptcy, on the 3d day of March, A. D. 1868, entitled the bankrupt, provided he conformed to all his duties under the bankrupt act, to all the privileges and benefits thereof; that one of those benefits was the preserving to him all the property specified in the act as exempted to those who come under its provisions. Another was a discharge from all his debts. I therefore do not understand that after the bankrupt had applied for the benefit of the act, one of his creditors, who had been served with notice that a warrant in bankruptcy had been issued out of the district court of the United States for the Southern district of Georgia, against the estate of Jesse H. Griffin, adjudged a bankrupt upon his own petition, could continue to collect his debts out of the estate by selling, under fieri facias, the homestead secured to the bankrupt by the bankrupt act. The relief which he sought from this court against his creditors, and the preservation of a home for himself and family, is not to be defeated by any act of one of those creditors. He with good reason understood that in this court, by surrendering all his estate, his debts would be discharged, and he allowed from his estate a shelter for his family. His house and certain other property he could have saved by applying to the state

court. It is impossible that having applied to this court in accordance with an act constitutionally passed by the general government for the full relief of insolvent debtors, that it is less powerful to save his home from the grasp of the creditor whose claim is being discharged by its action.

In brief, my opinion is that the homestead of a bankrupt cannot be sold after he has filed his petition in bankruptcy, although it may then be levied on by the United States marshal. In this case he served the notices of the issuing of the warrant in bankruptcy, and should have suspended proceedings on the fieri facias.

There is another very good reason why this sale should be set aside by your honor, which I deem it my duty to bring to your attention. For some cause, the whole of the real estate of the bankrupt, returned by him as worth fifteen hundred dollars, was sold for one hundred and twenty-five dollars—the homestead alone bringing fifty dollars. The generally known fact that Griffin was in the bankrupt court, and was entitled thereto to the exemptions allowed under the bankrupt act. together with the opinion generally entertained in the vicinity where the bankrupt dwells, that all other legal proceedings against a person are stayed by his filing his petition in bankruptcy, may have been the reason why this valuable property sold for so mere a trifle. The purchasers are before this court, having joined in asking that this question be certified to your honor, and I recommend that the sale be set aside, and the assignee directed to take charge of this property, and dispose of it in accordance with the requirements of the bankrupt act.

ERSKINE, District Judge. I have carefully considered the able opinion of Mr. Register HESSELTINE, in Re Jesse H. Griffin, a bankrupt, and affirm his decision.

GRIFFIN, In re. See Cases Nos. 5,810 and 5,815.

## Case No. 5,814.

### The GRIFFIN.

[4 Blatchf. 203.] [1]

Circuit Court, S. D. New York. Sept. 14, 1858. [2]

LIABILITY OF VESSEL FOR LOSS OF GOODS — NEGLIGENCE OF MASTER—COMMISSION TO TAKE TESTIMONY—EXECUTION OF.

1. Where goods shipped, under a bill of lading, from New York to Rio Janeiro, were not delivered to the consignee because, through the neglect of the master of the vessel, they were not entered on the manifest. or declared at the time of the delivery of the manifest to the custom-house officers, and were seized by the Brazilian government, and forfeited for such omission: *Held,*

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 5,789. Decree of the circuit court affirmed in 22 How. (63 U. S.) 491.]